**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____

IN RE:
CAPE ANIMAL REFERRAL AND
EMERGENCY CENTER, LLC,
          DEBTOR.

_____

Chapter 11
Case No. 09-10959

**MEMORANDUM OF DECISION**

## I. INTRODUCTION

The matters before the Court are as follows: (1) the "Motion filed by Interested Parties Mass. Veterinary Cardiology Services, Inc., Dr. Nancy Morris for Summary Judgment" (the "Motion for Summary Judgment") filed by the Mass. Veterinary Cardiology Services, Inc. ("MVC") and Dr. Nancy Morris ("Dr. Morris) (together, the "Movants"), (2) the "Opposition of Cape Animal Referral and Emergency Center LLC to Motion for Summary Judgment of Dr. Nancy Morris and Mass. Veterinary Cardiology Services, Inc." (the "Opposition to Summary Judgment") filed by the debtor Cape Animal Referral and Emergency Center, LLC (the "Debtor"), (3) the "Motion to Establish Facts Asserted in Their Statement of Undisputed Facts in Support of Their Motion for Summary Judgment" (the "Motion to Establish Facts") filed by the Movants, (4) the "Opposition of Cape Animal Referral and Emergency Center LLC to Motion of Dr. Nancy Morris and Mass. Veterinary Cardiology Services, Inc. to Establish Facts Asserted in Their Statement of Undisputed Facts in Support of Their Motion for Summary Judgment" (the "Opposition to the Motion to Establish Facts") filed by the Debtor, (5) the "Motion to Strike from Debtor's Opposition and the Affidavit of John Kelley, DVM all Factual Representations

1

That Do Not Comply with Bankruptcy Rule 7056(E)" (the "Motion to Strike") filed by the Movants, (5) the "Opposition of Cape Animal Referral and Emergency Center LLC to Motion of Dr. Nancy Morris and Mass. Veterinary Cardiology Services, Inc. to Strike Factual Assertions From the Opposition and the Affidavit of John Kelley DVM" (the "Opposition to the Motion to Strike") filed by the Debtor, (6) the "Motion to Strike the Opposition to the Motion to Establish Facts" filed by the Movants, and (7) the "Motion to Strike the Opposition to the Motion to Strike" filed by the Movants.

The Movants filed the Motion for Summary Judgment seeking to establish claims in the amount of $186,358.00 for unpaid wages and compensation, the purchase of veterinary equipment, and for other employment-related expenses owed to the Movants. The Debtor opposes summary judgment on the grounds that there are genuine issues of material fact that preclude summary judgment. For the reasons set forth below, I will grant partial summary judgment allowing the Movants claims for "Incentive Pay" and "Emergency Pay" ($35,274), Equipment Purchase and Lease Reimbursement ($33,498.11), and ClienTrax and Microsoft Enterprise Software ($4,400) and deny it with respect to the remainder of the claims. Additionally, I will deny the Motion to Establish Facts, Motion to Strike, Motion to Strike the Opposition to the Motion to Establish Facts, and the Motion to Strike the Opposition to the Motion to Strike.

## II. <u>PROCEDURAL MATTERS</u>

In many respects, the procedural matters of this case are more complex than the substance of the Summary Judgment Motion. Before me are four procedural motions whose outcome will determine the factual record. By necessity, I will address these threshold issues before reciting the facts of the case.

Pursuant to Local Rule 56.1 ("Local Rule 56.1") of the United States District Court for the District of Massachusetts, adopted and made applicable to proceedings in the Bankruptcy Court by Massachusetts Local Bankruptcy Rule ("MLBR") 7056-1, motions for summary judgment must include "a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions, and other documentation."[1] Failure to include such a statement constitutes grounds for denial of the motion.[2] Oppositions to summary judgment must similarly be accompanied by a statement of material facts to which the opposing party contends that there exists a genuine issue to be tried, with supporting references to the record.[3] All referenced documents must be filed as exhibits to the motion or opposition.[4] Material facts set forth in the moving party's statement are deemed admitted for purposes of summary judgment if not controverted by an opposing statement.[5]

"Anti-ferret" rules such as Local Rule 56.1 are designed to focus a "'court's attention on what is—and what is not—genuinely controverted.'"[6] The United States Court of Appeals for the First Circuit has frequently reiterated the importance of such rules, reasoning that they prevent "'unfairly shifting the burdens of litigation to the court by,' for example, leaving the 'court to

---

[1] LR, D. Mass 56. 1, adopted and made applicable to proceedings in the Bankruptcy Court by MLBR 7056-1.

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Cabán Hernández v. Philip Morris, USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007) (*quoting Calvi v. Knox County*, 470 F.3d 422, 427 (1st Cir. 2006)).

grope unaided for factual needles in a documentary haystack.'"[7] "When complied with, [the

rules] serve 'to dispel the smokescreen behind which litigants with marginal or unwinnable cases

often seek to hide [and] greatly reduce the possibility that the [bankruptcy] court will fall victim

to an ambush.'"[8] By adopting Local Rule 56.1, the District Court has imposed upon each party a

duty to draw the Court's attention to the pertinent facts of the case. "In the event that a party

opposing summary judgment fails to act in accordance with the rigors that such a rule imposes, a

[bankruptcy] court is free, in the exercise of its sound discretion, to accept the moving party's

facts as stated."[9]

Here, the Movants filed a statement pursuant to Local Rule 56.1 on November 10, 2010

(the "Statement of Undisputed Facts").[10] Rather than file a statement of disputed facts in

---

[7] *FedEx Customer Information Services, Inc. v. Fright Catalog*, No. 08-40180-TSH, 2010 WL 3505162 (D. Mass. Aug. 27, 2010) (*quoting Cabán Hernandez, 486 F.3d at 7-8). See Zimmerman v. Puccio*, 613 F.3d 60 (1st Cir. 2010); *Marianai-Colón v. Dept. of Homeland Security*, 511 F.3d 216 (1st Cir. 2007); *Swallow v. Fetzer Vineyards*, 46 Fed. Appx. 636 (1st Cir. 2001); *F.D.I.C. v. Anchor Properties*, 13 F.3d 27 (1st Cir. 1994).

[8] *Cabán Hernández,* 486 F.3d at 7 (*citing Calvi v. Knox County*, 470 F.3d at 427).

[9] *Cabán Hernández, USA*, 486 F.3d at 7. *See FedEx*, 2010 WL 3505162 at *1 ("Where a party fails to comply with Rule 56.1, the Court has the discretion to disregard such parties factual assertions/denials."); *Zimmerman*, 613 F.3d at 63; *Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004).

[10] The Movants initially failed to file the Statement of Undisputed Facts with their Motion for Summary Judgment as required by Local Rule 56.1. On November 11, 2010, one day prior to a scheduled hearing on the matter, the Movants filed the "Assented to Motion for Leave to File Statement of Undisputed Material Facts in Support of Motion and to Postpone Hearing on Motion for Summary Judgment" (the "Assented to Motion") wherein they requested leave to file a statement pursuant to Local Rule 56.1 (the "Statement of Undisputed Facts") and to continue the hearing on the matter for "approximately two weeks" to allow the Debtor time to respond. In support of their motion, the Movants averred that the Statement of Undisputed Facts was prepared contemporaneously with the Motion for Summary Judgment, but the Movants' counsel failed to file the Statement of Undisputed Facts because of "inadvertent administrative error" that "was not discovered until November 8, 2010 when [the Movants'] counsel began to prepare for trial."  I granted the Assented to Motion and continued the hearing to December 3, 2010.

response, the Debtor filed the "Affidavit of John Kelly DVM" (the "Kelley Affidavit"). In the Motion to Establish Facts, the Movants argue that the Kelley Affidavit does not satisfy the requirements of Local Rule 56.1 and the Statement of Undisputed Facts should therefore be admitted in its entirety and the facts therein established as undisputed.[11] The Debtor counters that while the Kelley Affidavit "is not specifically styled as a response to the statement of undisputed facts," it nonetheless "qualifies as a Response of [the Debtor] to the Statement of Undisputed Facts."[12]

Local Rule 56.1 provides that an "[o]pposition to motions for summary judgment shall include a *concise statement* of the material facts of record *as to which it is contended that there exists a genuine issue* to be tried, *with page references* to affidavits, depositions and other documentation."[13] The Kelley Affidavit sets forth a general narrative of assertions and claims based largely on personal knowledge of the affiant and in part on "information and belief."[14] It does not address each of the facts asserted in the Statement of Undisputed Facts and only makes a few passing references to the record. Nonetheless, the Kelley Affidavit does controvert several pertinent facts.[15] Whether to reject the Debtor's response and accept the moving party's facts as

---

Therefore, any defect under LR 56.1 with regard to the filing of the Statement of Undisputed Facts was cured by filing of the Assented to Motion and continuance of the hearing.

[11] Motion to Establish Facts, Docket No. 271 at 1-2.

[12] Opp'n to Motion to Establish Facts, Docket No. 281 at 1.

[13] Local Rule 56.1 (emphasis added).

[14] Kelley Aff., Docket No. 270, ¶¶ 12-13.

[15] The following statements from the Kelley Affidavit controvert the facts as presented by the Movants: "Debtor made a tender payment to Dr. Morris on account of 2005 additional compensation"; "Debtor did not agree in writing or otherwise to pay Dr. Morris in the amount of the claim for Compensation for Services Rendered Between December 1, 2003 and May 17, 2004"; "There was no agreement by Debtor to reimburse Dr. Morris for the Waiting Room

stated is within my *discretion*.[16] Having reviewed the Kelley Affidavit, I find that it is largely

unresponsive to the Movants' Statement of Undisputed Facts. As such, the majority of the facts

set forth in the Movants' statement are deemed admitted pursuant to Local Rule 56.1.[17]

Therefore the extent that the facts are uncontested, the Motion to Establish Facts is moot. To the

extent that the Kelley Affidavit controverts the facts as presented by the Movants, however, I am

willing to accept the Kelley Affidavit as a response pursuant to Local Rule 56.1 and the motion

is denied.

In the Motion to Strike, the Movants move the Court strike the following portions of the

record: (1) the Kelley Affidavit in its entirety, or (2) in the alternative, portions of the Kelley

Affidavit, and (3) the documents attached to the Debtor's Opposition to the Motion for Summary

Judgment. The Movants argue that the Kelley Affidavit should be stricken in its entirety on the

grounds that the affiant lacks competence to testify because he lacks personal knowledge of the

facts. As evidence of this, the Movants point to the affiant's prior deposition testimony where he

states that "he did not know the amounts owed to Dr. Morris."[18] As the four statements from the

Kelley Affidavit that are responsive to the Statement of Undisputed Facts do not relate to the

---

Television and no evidence of the purchase and installation of the object"; "There is no showing
when the commissions were overpaid, nor on what account." Kelley Aff., Docket No. 270, ¶¶ 2,
6, 8, 11.

[16] *FedEx*, 2010 WL 3505162 at *1; *Zimmerman*, 613 F.3d at 63; *Cabán Hernández,* 486 F.3d at
7; *Cosme-Rosado*, 360 F.3d at 45.

[17] LR, D. Mass. 56.1, adopted and made applicable to proceedings in the Bankruptcy Court by
MLBR 7056-1.

[18] Mot. to Strike, Docket No. 272 at 4.

amounts owed to Dr. Morris, this information does not contradict the prior testimony and the Movants' argument is incorrect.[19] Therefore, I will not strike the document from the record.

The Movants also contend that certain portions of the Kelley Affidavit should be stricken from the record because they lack specificity or amount to a "general denial."[20] As noted above, the Kelley Affidavit is largely unresponsive to the Movants' Statement of Undisputed Facts and striking any statements other than the four indicated in Footnote 15 above is unnecessary. As to the four statements that do controvert the Statement of Undisputed Facts, each of these statements is a specific denial of a particular fact. Therefore, I will not strike these statements from the record. Lastly, the Movants maintain that the documents attached to the Debtor's Opposition to Summary Judgment should be stricken from the record in their entirety. Each of the exhibits in question is either duplicative of those submitted into evidence as exhibits to the Movants' own moving papers or do not contain material facts. The Motion to Strike is therefore moot with respect to these documents.

In the Motion to Strike the Opposition to the Motion to Establish Facts, the Movants argue that the Opposition to the Motion to Establish Facts should be stricken because it "does not address the specific facts that are detailed in the Statement of Facts" and because the arguments made therein are "vague, conclusory, argumentative, and superficial."[21] In the Motion to Strike the Opposition to the Motion to Strike, the Movants argue that the Opposition to the Motion to Strike should be stricken from the record as it "incorrectly states that 'the Kelley Affidavit . . . shows the competence of the affiant to make the statements contained [therein]," and incorrectly

---

[19] *See* Footnote 15 *supra.*

[20] Mot. to Strike, Docket No. 272 at 1-3.

[21] Mot. to Strike Opp. to Mot. to Establish Facts, Docket No. 285 at 1-2.

asserts that the exhibits attached to the Opposition to Summary Judgment have "apparent authenticity."[22] These arguments are duplicative of those made in the Motion to Establish Facts and the Motion to Strike that I have already addressed. Therefore, these motions will also be denied.

## III. <u>BACKGROUND</u>

This dispute arises from soured business relations between Dr. Morris, a board certified veterinary cardiologist, MVC, a Massachusetts corporation of which she is the sole officer, stockholder, and director,[23] and the Debtor, a Massachusetts corporation that operates the Cape Animal Referral and Emergency Center (the "animal hospital"), a referral and emergency veterinary hospital on Cape Cod. Early in 2003, Dr. Morris began to organize veterinarians on Cape Cod to form the Debtor, which was incorporated on July 1, 2003.[24] Beginning in July, 2003, Dr. Morris served as the president and a member of the Debtor's board of managers.[25] In August, 2003, Dr. Morris presented a written proposal (the "Employment Proposal") to the Debtor wherein she would perform administrative and clinic work on behalf of the Debtor in exchange for $6,249.74 in compensation per month beginning on December 1, 2003.[26] Payment under the proposal was to be deferred until the Debtor received bank financing.[27] Dr. Morris alleges that the Debtor's board of managers accepted the proposal and that she continued to

---

[22] Mot. to Strike Opp. to Mot. to Strike, Docket No. 286 at 1-3.

[23] Statement of Undisputed Facts, Docket No. 246, ¶ 6.

[24] *Id.* at ¶ 7.

[25] *Id.* at ¶ 8.

[26] *Id.* at ¶ 3; Mot. for Summ. J., Ex. I.

[27] *Id.* at ¶ 4.

operate under this agreement from December 2, 2003 until May 17, 2004.[28] The Debtor contends that its board of managers did not agree to the proposal.[29]

The Movants and the Debtor subsequently entered into a written employment agreement (the "Employment Agreement"). Under the Employment Agreement, effective May 17, 2004, Dr. Morris, operating as MVC, was employed by the Debtor as a cardiology specialist and director of the animal hospital.[30] In return, she would receive the following compensation: (a) base salary of $100,000 per year for a four day work week; (b) emergency pay for after-hours calls including 100% of the after-hours endoscopy or ultrasound fees, as well as the added specialist consult fee; (c) incentive pay equal to 35% of net revenue received due to medical or surgical services performed for the Debtor above $175,000 per year (to be calculated quarterly, and paid 30 days after the end of each quarter); and (d) 10% of the hospital's operating margin, defined as cash receipts less operating expenses.[31] The Debtor also agreed to provide Dr. Morris the following benefits: (a) vacation time/sick/personal days; (b) holiday time; (c) malpractice insurance; (d) allowances for licenses; (e) health insurance; (f) a pet care discount; and (g) uniforms.[32] Furthermore, the Debtor agreed to purchase certain equipment and to reimburse the Movants for certain lease payments and other expenses.[33] Either party could terminate the

---

[28] *Id.* at ¶ 15.

[29] Kelley Aff., Docket No. 270, ¶ 6.

[30] Morris Aff., Docket No. 212, Exhibit A at 1.

[31] Statement of Undisputed Facts, Docket No. 246, ¶ 17.

[32] *Id.*

[33] *Id.*

Employment Agreement without cause by giving 90 days written notice and the Debtor could

terminate immediately "for cause" as provided by the following provision:[34]

> [the Debtor] may terminate the Employee's employment for cause at any time
> without prior notice if the Employee shall (i) commit fraud, willful misconduct,
> theft, misappropriation, embezzlement, misrepresentation or any violation of
> Massachusetts law, whether related to her course of employment or not (ii)
> materially violate any provisions of this Agreement (ill) be insubordinate or
> grossly incompetent in the course of her, employment or (iv) violate any
> provisions of [the Debtor]'s Employment Handbook or Conflicts of Interest
> Policy, or any other published [the Debtor] handbook, as they may be amended
> from time to time, (v) commit any criminal act, whether prosecuted or not,
> involving moral turpitude or a breach of her fiduciary duty to [the Debtor], (vi)
> the loss or expiration of any license, permit, or authorization required hereunder,
> (vii) employee having professional connection with or lending the use of her
> name to any illegal practitioner of veterinary medicine, (viii) an act constituting
> conduct reflecting unfavorably on the profession of veterinary medicine as
> described in Massachusetts General Laws c. 112, section 59, (ix) the death of
> employee. Employee agrees that [the Debtor]'s reputation in the business
> community is a vital asset to [the Debtor] and that any act by Employee, whether
> related to Employee's course of employment not, may erode [the Debtor]'s
> reputation and will be, in [the Debtor]'s sole discretion, cause for termination
> without prior notice. [35]

On March 17, 2005, the Debtor sent the Movants a memorandum (the "Employment

Memorandum") confirming an additional agreement to increase Dr. Morris's base salary to

$122,000, purchase additional equipment, and assume lease payments and a service agreement

on an ultrasound machine from the Movants at a cost of $45,575.[36] The Employment

Memorandum specifies the following payment terms: "The correct accounting would show the

equipment as assets on the balance sheet and a corresponding debt payable with interest. Interest

would be a some [sic] market rate, prime, and payment terms would be specified, e.g., payable

---

[34] *Id.*; Morris Aff., Docket No. 212, Ex. A.

[35] Morris Aff., Docket No. 212, Ex. A.

[36] Statement of Undisputed Facts, Docket No. 246, ¶¶ 18, 61; Morris Aff., Docket No. 212, Ex. J.

over 36 months."[37] Dr. Morris later agreed that $18,000 of the purchase price would be satisfied

by the transfer to Dr. Morris of additional ownership interests in the animal hospital.[38]

Over the next two years, the relationship between Dr. Morris and the Debtor's board of

managers soured. During this time, the Debtor failed to compensate Dr. Morris fully according to

the Employment Agreement[39] and personal and professional conflicts developed between Dr.

Morris and the other members of the Debtor's board of managers.[40] At some time between the

incorporation of the Debtor and April 2006, Dr. Morris accrued approximately $10,004.24 in

credit card charges and late fees and $3,104.24 in cellular phone expenses that she alleges were

incurred on behalf of the Debtor.[41] The Debtor contends that there were unspecified

"deficiencies" in Dr. Morris's job performance.[42]

On February 15, 2006, Dr. Morris sent a letter of resignation (the "Resignation Letter") to

the Debtor's board of managers and members.[43] In the Resignation Letter, Dr. Morris indicated

intent to resign her positions as president of the Debtor's board of directors and medical director

of the animal hospital. She also requested the Debtor to "[p]lease advise . . . if you wish for me to

continue as a staff cardiologist and prepare a contract to reflect the job duties involved with this

---

[37] *Id.*

[38] Statement of Undisputed Facts, Docket No. 246, ¶ 62.

[39] *Id.* at ¶ 22.

[40] Kelley Aff., Docket No. 270, ¶ 3.

[41] Statement of Undisputed Facts, Docket No. 246, ¶¶ 70-77.

[42] Kelley Aff., Docket No. 270, ¶ 3.

[43] Statement of Undisputed Facts, Docket No. 246, ¶ 25.

11

position."[44] The letter gave three months' notice of Dr. Morris's intended resignation and requested personal leave from February 14, 2006 until March 14, 2006.[45] On February 17, 2006, Dr. Joan Goffi, on behalf of the Debtor's board of managers, sent Dr. Morris an email accepting her resignation.[46] Sometime after February 23, 2006, the Debtor made a partial payment of $10,000 to Dr. Morris for compensation owed.[47] The Debtor asserts that this payment was made "on account of 2005 additional compensation."[48] On March 9, 2009, Robert C. Chamberlain, attorney for the Debtor, sent a letter to Dr. Morris (the "Termination Letter") advising her that the Debtor's board of managers "recently met and decided by unanimous vote to exercise its right to immediately terminate [her] current contract with [the Debtor] for cause."[49] The Termination Letter further lists eight citations of Dr. Morris's conduct that the Debtor alleges "constitute[] numerous examples of willful misconduct, insubordination, material violation of contractual provisions and breach of [her] fiduciary duties to [the Debtor] which provides more than ample basis for the decision of the Board to terminate [her] contract for cause."[50]

On April 18, 2007, Dr. Morris brought an action against the Debtor in state court seeking monetary and equitable relief for alleged violations of the Employment Agreement and related

---

[44] Morris Aff., Docket No. 212, Ex. P.

[45] Statement of Undisputed Facts, Docket No. 246, ¶ 25.

[46] *Id.* at ¶ 27.

[47] *Id.* at ¶ 30.

[48] Kelly Affidavit, Docket No. 270, ¶ 3.

[49] Statement of Undisputed Facts, Docket No. 246, ¶ 3; Morris Aff. Docket No. 212, ¶¶ 31-32, Ex. F.

[50] Statement of Undisputed Facts, Docket No. 246, ¶ 31; Mot. for Summ. J., Docket No. 209, Ex. F.

claims.[51] That action was stayed by the filing of the Debtor's bankruptcy petition on February 9, 2009. The Movants timely filed their proofs of claim and the Debtor filed an objection to the proofs of claim (the "Objection to Claims") on March 25, 2010.[52] The Movants filed the Response to the Objection to Claims on April 8, 2010, and the Supplemental Response to Debtor's Objection to Proofs of Claim on September 20, 2010.[53] I held a hearing on the Objection to Claims on September 24, 2010 and ordered the Movants to file a Motion for Summary Judgment within one month of the hearing.[54] The Movants filed the Motion for Summary Judgment on October 25, 2010.[55] The Debtor subsequently filed the Opposition to the Motion for Summary Judgment on November 4, 2010.[56] The Movants filed the Statement of Undisputed Facts pursuant to Local Rule 56.1 on November 10, 2010.[57] In response, the Debtor filed the Kelley Affidavit on December 1, 2010.[58] The Movants then filed the Motion to Establish Facts and the Motion to Strike on December 2, 2010.[59] I held a hearing on the matter on December 3, 2010 and took the matter under advisement on December 6, 2010.[60] The

---

[51] Statement of Undisputed Facts, Docket No. 246, ¶ 1.

[52] Objection to Claim 38, 39 of Claimant Nancy Morris and Mass. Veterinary Cardiology Services, Inc., Docket No. 133.

[53] Response, Docket No. 134; Supplemental Resp. to Debtor's Objection to Proofs of Claim, Docket No. 178.

[54] Order dated September 24, 2010, Docket No. 184.

[55] Mot. for Summ. J., Docket No. 209.

[56] Opp'n to Mot. Summ. J., Docket No. 234.

[57] Statement of Undisputed Facts, Docket No. 246.

[58] Kelley Aff., Docket No. 270.

[59] Mot. to Establish Facts, Docket No. 271; Mot. to Strike, Docket No. 272.

[60] Order dated December 6, 2010, Docket No. 276.

Movants filed the Supplemental Memorandum in Support of the Motion for Summary Judgment

on December 23, 2010.[61] The Debtor filed the Opposition to the Motion to Establish Facts and

Opposition to the Motion to Strike on December 28, 2010.[62] Finally, the Movants filed the

Motion to Strike the Opposition to the Motion to Establish Facts and the Motion to Strike the

Opposition to the Motion to Strike on January 7, 2011.[63]

## IV. <u>DISCUSSION</u>

### A. <u>The Summary Judgment Standard</u>

Pursuant to Fed. R. Civ. P. 56, summary judgment "shall be rendered if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law."[64] "A

'genuine' issue is one supported by such evidence that 'a reasonable jury, drawing favorable

inferences,' could resolve it in favor of the nonmoving party."[65] Material facts are those having

the potential to affect the outcome of the suit under the applicable law.[66]

The party seeking summary judgment "always bears the initial responsibility . . . of

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

---

[61] Supplemental Mem. in Support of Mot. for Summ. J., Docket No. 280.

[62] Opp'n to Mot. to Establish Facts, Docket No. 281; Opp'n to Mot. to Strike, Docket No. 282.

[63] Mot. to Strike the Opp'n to the Mot. to Establish Facts, Docket No. 285; Mot. to Strike the Opp'n to the Mot. to Strike, Docket No. 286.

[64] Fed. R. Civ. P. 56(c) made applicable in adversary proceedings by Fed. R. Bankr. P. 7056.

[65] *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d. 1, 2 (1st Cir. 1999) (*quoting Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 427 (1st Cir. 1996)).

[66] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314-315 (1st Cir. 1995); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

admissions on file, together with the affidavits, if any,' which demonstrate the absence of a genuine issue of material fact."[67] The nonmoving party must then "produce 'specific facts, in suitable evidentiary form, to . . . establish the presence of a genuine issue.'"[68] A genuine issue cannot be established by "conclusory allegations, improbable inferences, and unsupported speculation."[69] The Court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.[70]

B. The Claims

A proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and amount of the claim.[71] To rebut this prima facie evidence, the objecting party must produce "substantial evidence."[72] If the objecting party successfully rebuts the prima facie evidence, the burden shifts to the claimant to establish the validity of its claim.[73] The Federal Rules of Bankruptcy Procedure require that a proof of claim for an unsecured claim satisfy two requirements. First, the proof of claim must "conform substantially to the appropriate Official Form."[74] Second, "when a claim . . . is based

---

[67] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

[68] *Triangle Trading Co.*, 200 F.3d at 2 (*quoting Morris v. Gov't Dev't Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994)).

[69] *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990) (*quoting Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

[70] *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000).

[71] Fed. R. Bankr. P. 3001(f).

[72] *In re Hemingway Transp., Inc.,* 993 F.2d 915, 925 (1st Cir.1993).

[73] *Id.* at 125.

[74] Fed. R. Bankr. P. 3001(a).

on a writing, the original or a duplicate shall be filed with the proof of claim."[75] Official Form

10, the relevant form in this instance, further instructs the creditor to "[a]ttach redacted copies of

any documents that support the claim, such as promissory notes, purchase orders, invoices,

itemized statements of running accounts, contracts, judgments, mortgages, and security

agreements, You may also attach a summary."[76] Claims not filed in accordance with the Federal

Rules of Bankruptcy Procedure are not accorded prima facie validity.[77] Such failure is not a basis

for disallowing a claim, but the creditor must come forward with evidence of the claim's validity

and amount.[78] Each of the Movants' claims are based on writings, yet neither of the proofs of

claim were filed with the relevant documents. Each is accompanied only by a bare spreadsheet

itemization of the claims that is insufficient to give the proofs of claim prima facie validity.

While this is not grounds for disallowing the claims, the burden now shifts to the Movants to

come forward with evidence of the validity and amount of each claim.

1. Compensation for Services Between December 1, 2003 and May 17, 2004

MVC asserts a claim of $45,833.33 as compensation for services rendered between

December 1, 2003 and May 17, 2004.[79] The Movants allege that the parties entered into an

employment agreement for this period as proposed by the Employment Proposal.[80] The Debtor

---

[75] Fed. R. Bankr. P. 3001(c).

[76] Official Form 10.

[77] Fed. R. Bankr. P. 3001(f). *See In re Long*, 353 B.R. 1, 13 (Bankr. D. Mass. 2006) ("Where the proof of claim is not filed in accordance with the Federal Rules of Bankruptcy Procedure, the proof of claim does not constitute prima facie evidence of the validity and amount of the claim, and therefore the burden of proof rests at all times on the claimant.").

[78] *Hemingway Transp.,* 993 F.2d at 925.

[79] Mot. for Summ. J., Docket No. 209, ¶¶ 66-69.

[80] Statement of Undisputed Facts, Docket No. 246, ¶ 66.

disputes this allegation and presents affidavit evidence that it "did not agree in writing or otherwise to pay Dr Morris in the amount of the claim for Compensation for Services Rendered Between December 1, 2004 and May 17, 2004."[81] Additionally, the record indicates that sometime after February 23, 2006, the Debtor made a payment of $10,000 on account of this claim, but the Movants have not accounted for this payment in the calculation of the claim.[82] Therefore, there are genuine issues of material fact related to both the validity and amount of the claim. Summary judgment is denied with respect to this portion of the claim.

2. Incentive Pay and Emergency Pay

MVC asserts a claim of $35,274 for incentive and emergency pay due under the Employment Agreement. The Employment Agreement provides that Dr. Morris would receive certain commissions based on "after hours emergency calls" ("Emergency Pay") and for a percentage of net revenues received for certain medical or surgical services ("Incentive Pay").[83] As evidence to support this claim, the Movants present the affidavit of Dr. Morris, a copy of the Employment Contract, and documentation of the hours worked and procedures performed.[84] The Debtor does not address this claim in its Opposition to Summary Judgment or Objection to Proof of Claim and has offered no evidence to dispute this claim. Therefore, there are no genuine issues of material fact and summary judgment is granted with respect to this portion of the claim.

---

[81] Kelley Aff., Docket No. 270, ¶ 6.

[82] Although the Debtor asserts that the $10,000 payment was made on account of this claim, MVC notes on its proof of claim that it received the check for $10,000 from the Debtor but states that "[i]t is unclear, however, for which of the [claims] this amount was intended to compensate [MVC]." MVC does not, in turn, deduct the $10,000 payment from any of the claims listed on the proof of claim. Proof of Claim #38, Ex. A.

[83] Morris Aff., Docket No. 212, Ex. A at 1.

[84] Statement of Undisputed Facts, Docket No. 246, ¶¶ 47-48, Morris Aff., Docket No. 212, Ex. B, D.

3. Termination Pay

MVC asserts a claim of $30,500 on the grounds that the Debtor violated the Employment Agreement by terminating Dr. Morris without providing sufficient notice. The Employment Agreement provides that either party may terminate upon 90-days notice or that the Debtor may terminate "for cause at any time without prior notice."[85] The Movants argue that the Debtor did not have cause to terminate her employment and she is therefore entitled to a claim for full compensation for the 90-day notice period called for in the Employment Agreement. As evidence to support the claim, the Movants offer the Employment Agreement, the Affidavit of Nancy Morris, the Resignation Letter, Dr. Joan Goffi's February 17, 2006 email accepting Dr. Morris's resignation on behalf of the Debtor's board of managers, the Termination Letter, and the Affidavit of Courtney Cruz. The Debtor does not address this claim in its Opposition to Summary Judgment or Objection to Proof of Claim and has offered no additional evidence to dispute this claim, although the Termination Letter purports to terminate Dr. Morris for cause.[86] In the letter, the Debtor's counsel alleges various actions taken by Dr. Morris that it asserts "constitute[] numerous examples of willful misconduct, insubordination, material violation of contractual provisions and breach of your fiduciary duties . . . which provides more than ample basis for the decision of the Board to terminate your conduct for cause."[87] Despite the Debtor's failure to address this claim in its Opposition to Summary Judgment or Objection to Proof of Claim, the allegations contained in the Termination Letter are sufficient to give rise to a genuine

---

[85] Morris Aff., Docket No. 212, Ex. A at 3.

[86] Morris Aff., Docket No. 212, Ex. F.

[87] *Id.*

18

issue of fact over whether Dr. Morris was terminated for cause. Summary judgment is denied with respect to this portion of the claim.

### 4. Unpaid Vacation and Holiday Pay

MVC asserts a claim of $13,800 for 44 paid days of vacation and/or holidays accrued during employment from May 17, 2004 until March 9, 2006.[88] As evidence to support the claim, the Movants offer the Affidavit of Nancy Morris and the Employment Agreement.[89] The Debtor does not address this claim in its Opposition to Summary Judgment or Objection to Proof of Claim and has offered no evidence to dispute this claim. Nonetheless, the amount of this claim depends on whether Dr. Morris was terminated for cause. This genuine issue of material fact precludes summary judgment on this claim and summary judgment is denied with respect to this portion of the claim.

### 5. Equipment Purchase and Lease Reimbursements

MVC asserts a claim of $33,498.11 arising from an agreement in the Employment Proposal that the Debtor would purchase certain medical equipment from the Movants and assume lease payments and service agreements for an ultrasound machine leased by the Movants.[90] This agreement is evidenced by the Employment Memorandum and the Movants have presented deposition evidence that the Debtor retained some or all of the equipment in question after Dr. Morris' employment was terminated.[91] The Debtor does not deny that it agreed to purchase the equipment or assume the lease payments. The Debtor also does not deny that it

---

[88] Mot. for Summ. J., Docket No. 209 at 12-13.

[89] Statement of Undisputed Facts, Docket No. 246, ¶¶ 58-60.

[90] Mot. for Summ. J., Docket No. 209 at 61-65.

[91] Cruz Aff., Docket No. 211; Ex. 4 at 80-86.

19

retained the equipment. Nor does it dispute the Movants' calculations of the amounts owed. As such, there is no genuine issue of material fact to be determined and summary judgment is granted with respect to this portion of the claim.

### 6. Unreimbursed Credit Card and Cellular Telephone Expenses

The Movants assert a claim of $11,000 for "unreimbursed credit card expenses" and $3,104.24 for unreimbursed cellular telephone expenses.[92] For each of these claims, the Movants allege that "[t]he Employment Agreement obligated [the Debtor] to reimburse Dr. Morris for expenses legitimately incurred on behalf of [the Debtor]," including the credit card and cellular telephone expenses.[93] The Employment Agreement contains no such provision. To the extent that the Movants allege that there was a verbal or other agreement for the payment of these expenses, these are material facts to be determined at trial. [94] Summary judgment is therefore denied with respect to this claim.

### 7. Waiting Room Television

MVC asserts a claim of $313.65 for the purchase of "a television for the hospital waiting room . . . with the understanding that [Dr. Morris] would be reimbursed by [the Debtor]."[95] The Debtor disputes this claim and the Kelley Affidavit states that "[t]here was no an [sic] agreement by Debtor to reimburse Dr Morris for the Waiting Room Television and no evidence of the

---

[92] Mot. for Summ. J., Docket No. 209 at 14-15; Mem. In Support of Mot. for Summ J., Docket No. 209 at 15.

[93] Statement of Undisputed Facts, Docket No. 246, ¶¶ 70, 75.

[94] Because the Movants failed to define the term "Employment Agreement" as it is used in the Memorandum in Support of the Motion for Summary Judgment, there is some ambiguity as to what the Movants intend to argue in support of this claim.

[95] Mot. for Summ. J., Docket No. 209 at 15

purchase and installation of the object."[96] Therefore, there are genuine issues of fact that preclude summary judgment on this claim.

### 8. Other Expenses Paid on Behalf of the Debtor

MVC asserts a claim of $2,110 for "other expenses paid on behalf of [the Debtor" including $1,585 for "dues, licenses, and continuing education" owed under the Employment Agreement and $525 for two "client refunds paid on behalf of the Debtor."[97] The Debtor does not dispute the validity or amount of this claim. Therefore, there is no remaining issue of material fact to be determined and summary judgment is granted with respect to this portion of the claim.

### 9. ClienTrax and Microsoft Enterprise Software

MVC asserts a claim of $4,400 for the value of two software programs that are property of the Movants but are currently in the possession of the Debtor. The Movants assert that the Debtor "has retained possession and refused to return the software since Dr. Morris's termination."[98] The Debtor does not dispute that it retains possession of the property or the value of the claim. Therefore, there are no genuine issues of material fact related to this claim and summary judgment is granted with respect to this portion of the claim.

### 10. Refunds Owed Movants

MVC asserts a claim of $1,809.20 for a refund of commissions that the Movants allegedly overpaid to the Debtor under the Employment Agreement.[99] As evidence of this claim,

---

[96] Kelley Aff., Docket No. 270, ¶ 8.

[97] Mot. for Summ. J., Docket No. 209 at 15.

[98] Statement of Undisputed Facts, Docket No. 246, ¶ 84.

[99] Mot. for Summ. J., Docket No. 209 at 16.

the Movants submit only the Affidavit of Dr. Morris. The Debtor correctly notes that "[t]here is no showing when the commissions were overpaid, nor on what account."[100] The Movants have not produced sufficient documentary evidence to prove this claim, and summary judgment is denied with respect to it.

## V. <u>CONCLUSION</u>

In light of the forgoing I will enter an order granting partial summary judgment and allow the Movants claims for Incentive Pay and Emergency Pay ($35,274), Equipment Purchase and Lease Reimbursement ($33,498.11), and ClienTrax and Microsoft Enterprise Software ($4,400).

_____
William Hillman
United States Bankruptcy Judge

Dated: February 22, 2011

---

[100] Kelley Aff., Docket No. 270, ¶ 11.